UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

Plaintiff,

Case No: 1:22-cr-00155-PAE

v.

RONALD BAUER,

Defendant.

_____

## DECLARATION OF HUGH HURWITZ

I, Hugh Hurwitz, declare that the following statements are true:

### BACKGROUND OF DECLARANT

1. I am a retired administrator with the Federal Bureau of Prisons (BOP) of the United States Department of Justice. I retired in March 2021, after working for the BOP for a total of approximately 16 years over my career, including a term of service as the Acting Director of BOP from May 2018 through August 2019. Most recently, I served as the Assistant Director for the Administration Division of the BOP. Prior to that, from July 2017 through May 2018, and August 2019 through August 2020, I was the Assistant Director of the Reentry Services Division (RSD) of the BOP. I also held other operations roles at the BOP. Today I work as a prison management and reform consultant for my own firm, HJH Advisors, LLC.

2. Given the various roles and responsibilities I had within the BOP, I am familiar based on my personal experience with the issues I address herein. Both as Acting Director and in my two Assistant Director roles, I was directly involved in and dealt with issues involving federal prison conditions and the challenges facing the Agency.

3. A copy of my resume which includes my relevant work experience is attached to this report as Exhibit A.

1

4. I was asked to provide my expert opinion on the process for detaining and designating Mr. Bauer as well as the conditions and challenges with the BOP as it relates to him not being a U.S. citizen.

5. In preparation for this declaration, I reviewed the following documents:
    - Indictment of Mr. Ronald Bauer
    - Plea Agreement for Mr. Ronald Bauer

6. Mr. Bauer has been indicted on the following criminal counts in the United States:
    - Count 1: 18 USC §371 conspiracy to commit securities fraud

## BOP OVERVIEW AND DESIGNATIONS

7. The BOP operates 122 prison facilities across the United States. Facilities are classified into four security-level categories which are Minimum Federal Prison Camp (Camp or FPC), Low Federal Correctional Institution (FCI), Medium FCI and High United States Penitentiary (USP). There are also administrative facilities such as Detention Centers, referred to as Metropolitan Correctional Centers (MCC), Metropolitan Detention Centers (MDC) or Federal Detention Centers (FDC), and Federal Medical Centers (FMC), each of which house all security levels.

8. If Mr. Bauer is ultimately sentenced to a term of incarceration, BOP will make the decision about where he serves his sentence. This process is known as 'designating' the defendant. After sentencing, defendants are assigned an initial Security Classification by the BOP to determine the appropriate security level for housing during a term of incarceration. Some of the factors used in this classification are age, history of violence, previous escapes, criminal history, history of violence and severity of the instant offense.[1] For most sentenced individuals, BOP attempts to designate within 500 miles of the legal residence or family, although this will not be applicable to Mr. Bauer as a non-citizen.

9. In addition to security level, every facility has a medical and mental health care level. Inmates themselves are also assigned a Care Level based on the level of physical and mental health services they require. Care Levels are One through Four, with Care

---

[1] DOJ-BOP "Program Statement 5100.08, *Inmate Security Designation and Custody Classification*." September 12, 2006.

2

Levels One and Two reserved for more healthy inmates, whose care can be handled within a standard BOP facility. Care Levels Three and Four are assigned to inmates with more serious physical or mental health concerns, requiring more intensive care beyond that available at a mainstream BOP facility. FMCs are Care Level Four facilities.

10. The BOP will assess Mr. Bauer's security, care, and programmatic needs and designate him to a facility commensurate with those needs. As a non-citizen, BOP is not bound by any geographical restrictions. While the BOP attempts to designate people within 500 miles of the inmate's residence, Mr. Bauer has no U.S. residence meaning that BOP can designate him to any of their facilities that meet his needs without consideration of location.

11. As a Criminal Alien, BOP will also likely house Mr. Bauer in a higher security facility than a similarly situated US Citizen. Non-citizens are generally considered to be higher security risks of escape as they would likely be looking to remain in the United States rather than face deportation upon the conclusion of their sentence. Thus, BOP tends to not house non-citizens in minimum security camps.

12. In terms of family interactions, BOP offers three primary means of communication: family and legal visits during specified hours, written communications, and telephone calls. Writing letters is straightforward but does require international postage for correspondence outside the United States. International phone calls are more challenging. Inmates are only allowed to use phones during certain hours of the days, which may be inconvenient for family in distant time zones. Similarly, phone calls are very expensive, and individuals have limits on the amount of time they may spend on calls.

## INELIGIBLE FOR VARIOUS PRE-RELEASE TRANSITIONAL AND OTHER NEWER TYPE OF EARLY RELEASE PROGRAMS AND INITIATIVES

13. Under the First Step Act (FSA), eligible inmates can earn up to one year off their sentence and can earn additional credits toward pre-release custody (i.e. halfway house and/or home confinement). Eligible inmates can earn up to 15 days off their sentence for every 30 days of programming or participation in productive activities. Mr. Bauer's status as a deportable "criminal alien" complicates the awarding of credits resulting from pre-release program participation. For inmates who are not the subject of a final order of removal under immigration law, credits will be awarded. However, in the likely event a detainer is lodged by ICE, and if Mr. Bauer becomes subject to an order of removal, he will lose the ability to apply his earned FSA credits toward early release, thus subjecting him to a longer prison term as compared to a similarly situated U.S. citizen with the same sentence.

14. To illustrate the disparity in sentences, I provide the comparison table of a U.S. Citizen's time served to that of a non-U.S. Citizen like Mr. Bauer to illustrate the differences because of First Step Act credits (Note, this excludes Prerelease custody (home detention/halfway house)):

| Sentence Imposed (Months) | U.S. Citizen Time to Serve (Days) | Non-U.S. Citizen Time to Serve (Days) |
|---|---|---|
| 12 months, 1 day | 220 | 310 |
| 18 months | 332 | 467 |
| 24 months | 426 | 621 |
| 30 months | 538 | 778 |
| 36 months | 648 | 933 |
| 48 months | 879 | 1,244 |
| 54 months | 1,086 | 1,401 |
| 60 months | 1,190 | 1,555 |

4

15. Most inmates serve the latter portion of their custodial sentence in one of the BOP's Residential Reentry Centers (RRC) or "halfway houses." As part of the Second Chance Act eligible inmates can get up to one year of halfway house prior to their release from the BOP. Being a non-U.S. citizen will preclude Mr. Bauer from being considered for RRC placement as evidenced by a January 20, 2025 internal BOP memorandum instructing staff to stop all referral and placement of individuals with immigration detainers.[2] If ICE places a detainer on Mr. Bauer, he most likely will not be placed in an RRC near the end of his sentence, and will not be eligible for a privilege that citizen's receive. As I explained above, the risk of escape is too great for a non-citizen who may choose to abscond to avoid deportation.

16. 

17. Social furloughs are also available to qualified inmates, who are within 24 months of release, and who have demonstrated responsible behavior within the prison environment. These types of social outings with their families and loved ones provide inmates with a positive incentive for following prison rules and acting responsibly. Furloughs can last 8 hours, overnight, or for several days. These programs provide inmates with an opportunity to reestablish family and community ties, secure employment prior to release, and complete various tasks necessary for successful reentry into the community where they intend to reside upon release. Furloughs would not be accessible to Mr. Bauer based on his status as a deportable alien.

---

[2] U.S. Department of Justice Federal Bureau of Prisons, "Memorandum For All Residential Reentry Managers and Regional Correctional Program Administrators, Updated Guidance on Application of Federal Time Credits to Prerelease Custody for All Non-U.S. Citizens with an Active Detainer," Memo from Bianca Shoulders, Administrator Residential Reentry Management Branch Reentry Services Division, January 30, 2025.

5

**THE ADDED PUNISHMENT OF ICE DETENTION AND DEPORTATION**

18. If it is determined Mr. Bauer is a deportable criminal alien his post-incarceration return home will be further complicated by the difficulty of a U.S. Immigration and Customs Enforcement (ICE) detainer that is lodged against him. ICE's Criminal Alien Program (CAP) is responsible for identifying, processing, and removing deportable criminal aliens incarcerated in federal, private, state, and local prisons and jails—the enforcement of removal is overseen by ICE's Office of Detention and Removal Operations. When an inmate's sentence is complete, they are transferred to ICE custody and their status is changed to "detainee," essentially, extending the prison sentence by weeks or months. Even when the inmate is not opposing her/his deportation, the inmate can be incarcerated in an ICE facility (usually contracted from a private prison provider) for months prior to her/his deportation.

19. In summary, without any consideration for Mr. Bauer's status as a non-US citizen and the likely classification as a Deportable Criminal Alien, he likely will serve substantially more time in prison than other U.S. citizen inmates with a similar profile and will do so in a higher security prison.

_____
Hugh J. Hurwitz                                              Date

# EXHIBIT A

# HUGH JAMES HURWITZ
(617) 858-5008
Info@Prisonology.com

**Education**
**American University, Washington College of Law**, Washington, DC; JD Cum Laude; May 1990
**University of Rochester**, Rochester, NY; BA Political Science; May 1987

**Professional Experience**
**HJH Advisors, LLC**
*President, April 2021-Present*
- Provide consulting services in prison operations and management, reentry and reform, and prison construction. He also advises on acquisition and financial management, organizational change and transformation, business process improvements, implementing new laws and policies, and human capital initiatives.

**American University, School of Public Affairs, Department of Justice, Law and Criminology**
*Adjunct Professor, July 2021-Present*
- Teach upper-level undergraduate course titled The Prison Community.

**U.S. Department of Justice, Federal Bureau of Prisons**
*Assistant Director, Administration Division, August 2020-April 2021*
*Assistant Director, Reentry Services Division, July 2017-May 2018; August 2019-August 2020*
*Acting Director, May 2018-August 2019*
*Senior Deputy Assistant Director for Information, Policy & Public Affairs, July 2015-July 2017*
*Procurement Executive, September 2001-October 2003*
*Acquisitions Branch Chief, November 2000-September 2001*
*Chief, National Contracts and Policy Section, November 1997-June 2000*
*Assistant Chief, Construction Contracting Section, April 1997-November 1997*
*Assistant General Counsel, September 1992-October 1993*
*Attorney-Advisor, September 1991-September 1992*
*Law Clerk, May 1988-April 1990*

**National Aeronautics and Space Administration**
*Assistant Inspector General for Management and Planning, May 2012-July 2015*

**U.S. Department of Education**
*Deputy Chief Financial Officer, January 2010-May 2012*
*Senior Procurement Executive, October 2007-January 2010*

**Food and Drug Administration**
*Director, Office of Information Technology Shared Services, September 2006-October 2007*
*Director, Office of Acquisitions & Grants Services, October 2003-September 2006*

**National Institutes of Health, Center for Information Technology**
*Deputy Director, Division of Customer Support, June 2000-November 2000*

**Law Offices of Alan M. Grayson & Associates**
*Attorney, October 1993-August 1995*

**District of Columbia Court of Appeals**
*Court Law Clerk, September 1990-September 1991*

**Honors/Appointments**
- Selected as a Member of the Council on Criminal Justice (https://counciloncj.org)
- Member American Correctional Association
- Member Correctional Leaders Association, 2018-2019
- Appointed Acting Director of the Bureau of Prisons by Attorney General Jeff Sessions, May 2018
- Appointed Vice-Chair of the Chief Acquisition Officers Council, 2009-2012
- Selected as Acquisition Chief of the Year 2010 by Government Executive magazine https://www.govexec.com/oversight/2010/06/chief-of-the-year-acquisition/31705/
- Member of the Senior Executive Service
- Department of Justice Honors Attorney

**Articles Published**

The Hill, *To fix our prison system, we need more than a change in leadership*
https://thehill.com/opinion/criminal-justice/586981-to-fix-our-prison-system-we-need-far-more-than-a-change-in/

The Hill, *Three steps to setting federal prisons on the right path*
https://thehill.com/opinion/criminal-justice/3680974-three-steps-to-setting-federal-prisons-on-the-right-path/

The Hill, *We need a well-designed plan to repair or replace our crumbling federal prisons*
https://thehill.com/opinion/criminal-justice/3866946-we-need-a-well-designed-plan-to-repair-or-replace-our-crumbling-federal-prisons/

The Hill, *First Step Act was only half the job; now a 'Second Step' is needed*
https://thehill.com/opinion/criminal-justice/3878887-first-step-act-was-only-half-the-job-now-a-second-step-is-needed/

The Hill, *Moving elderly prisoners home saves taxpayer dollars without sacrificing safety*
https://thehill.com/opinion/criminal-justice/4223158-moving-elderly-prisoners-home-saves-taxpayer-dollars-without-sacrificing-safety/

Corrections 1, *Electronic monitoring in residential reentry centers*
https://www.corrections1.com/probation-and-parole/articles/electronic-monitoring-in-residential-reentry-centers-dvqsuCKnjcBXQUld/

The Atlanta Journal-Constitution, *A fair approach to placement of inmates in the community*
https://apple.news/AcoEekQawRiij3Jak0B_DXw

The Hill, *Biden's easy case for clemency: prisoners in home confinement*
https://thehill.com/opinion/criminal-justice/5008249-biden-pardons-criminal-justice/

The Atlanta Journal-Constitution, *The Bureau of Prisons has plenty of open beds for reentry*
http://www.ajc.com/opinion/opinion-the-bureau-of-prisons-has-plenty-of-open-beds-for-reentry/NTGEKKWQ5REKNDELM4KHWQLGZU/

**Expert Witness Cases**
Romano v Warden, FCI Fairton, D.NJ, Civ No. 23-2919, October 9, 2023
USA v Scott, SDNY, Case no. S3-20-Cr.534 (GHW), January 29, 2024
USA v Long, D.MA, No. 18-cr-10161-NMG, February 22, 2024
USA v Houston, SDFL, Dkt No 22-20249-CR, September 5, 2024
USA v Waterman, WDMO, Case No. 22-05035-01-CR-SW-SRB, September 25, 2024
USA v Farese, D.NJ, Case Number: 2:21-cr-00877-MEF
USA v Forlit, Extradition Act, Westminster Magistrates Court, October 31, 2024
USA v Duvall, SDCA, Case Number: 3:20-cr-1857-WQH