## DECLARATION IN SUPPORT OF RONALD BAUER

### Declaration of Rachel S. Winkler

I, Rachel S. Winkler, declare as follows:

1. I am a member in good standing of the bar in the District of Columbia and the State of Arizona.

2. I am a partner at Nixon Peabody LLP in Washington, D.C. and am a member of the firm's Cross Border Risks practice group.

3. Previously, I have served in various roles at the Department of Homeland Security ("DHS"). In those capacities, I have advised the Secretary and General Counsel of DHS on a wide variety of issues regarding immigration, enforcement, and border security and have represented the U.S. government in global summits with international partner governments regarding the development of guidance related to forced labor compliance programs.

4. Through my prior experience both in government and the private sector, I have also developed extensive knowledge regarding U.S. Immigration and Customs Enforcement ("ICE") as well as the laws and policies governing deportation proceedings.

5. I represent dual Canadian-United Kingdom national, Ronald Bauer, in connection with the potential immigration consequences of his guilty plea in Case No. 1:22-CR-00155 in the U.S. District Court for the Southern District of New York.

6. As is discussed in greater detail below, there is a significant risk that ICE will seek to deport Mr. Bauer as a result of this conviction. Additionally, his sentence in this matter could determine whether ICE takes action to remove Mr. Bauer from the United States, and it could also impact Mr. Bauer's eligibility for First Step Act credits, the location where he completes his sentence, and his future eligibility to return to the United States.

7. Pursuant to the Immigration and Nationality Act ("INA"), a non-citizen is deportable if they are convicted of an "aggravated felony at any time after admission." 8 U.S.C. §1227(a)(2)(A)(iii).

8. It is extremely likely that ICE will argue that Mr. Bauer's conviction is an "aggravated felonies" involving "fraud or deceit." 8 U.S.C. §1101(a)(43)(M)(i). An attempt or conspiracy to commit an offense considered an aggravated felony under the INA also constitutes an aggravated felony. 8 U.S.C. § 1101(a)(43)(U), *cf. United States* v. *Britt*, No. 18-CR-0036 (JPO), 2024 WL 168333 (S.D.N.Y. Jan. 16, 2024) (noting that conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349 qualified as an aggravated felony).

9. Whether Mr. Bauer's conviction is considered an aggravated felony for immigration purposes therefore depends on two key factors determined in sentencing - whether there is a loss attributable to a victim or victims that exceeds $10,000, and whether he will be subject

1

any formal imprisonment that lasts for a period that exceeds 365 days. 8 U.S.C. § 1101(a)(43)(M).

10. To determine whether there has been a loss to a victim or victims over $10,000, an order of restitution is widely accepted as indicative of such a loss. A forfeiture order, however, only *may* demonstrate a loss where "the forfeiture ordered [is] traceable and sufficiently tethered to the conviction." *Matter of F-R-A,* 28 I&N Dec. 460, 464 (BIA 2022). While it is my understanding that Mr. Bauer has already received a money judgment requiring <u>no restitution and no penalty</u>, and he has since satisfied his forfeiture judgement, he may be able to overcome a finding that his conviction constitutes an aggravated felony depending upon the additional terms of his sentence.

11. In the event that ICE considers Mr. Bauer's conviction an aggravated felony and seeks to initiate removal proceedings against Mr. Bauer, he will also face immediate consequences if he is sentenced to a period of incarceration in the custody of the U.S. Bureau of Prisons ("BOP"). If ICE issues a detainer for Mr. Bauer while he is in BOP custody, then BOP will designate Mr. Bauer as a deportable alien, making him ineligible for certain BOP programs like transfer to a "Community Corrections Center" (halfway house) or home confinement *See* BOP Program Statement 7310.04 § 10.  It is my understanding that Mr. Bauer's mother and brother reside in Florida and are willing to allow him to serve any home conferment on their property.

12. Additionally, Mr. Bauer's designation as a deportable alien would also make him ineligible for a minimum-security facility such as a Federal Prison Camp (FCP) or even, potentially, a low security facility, such as a Federal Correctional Institution Low (FCI Low).

13. Mr. Bauer's First Step Act credit eligiblity will also be impacted negatively – likely preventing him from accessing credits as a deportable alien. The First Step Act (FSA), signed into law on December 21, 2018, provides that individuals who successfully participate in certain evidence-based recidivism-reduction programs or productive activities will be eligible to earn time credits to be applied toward their prerelease custody or transfer to supervised release.  *See* Pub. L. No. 115-391, 132 Stat. 5194 (2018); *see also* 18 U.S.C. § 3632(d)(4)(C).

14. Under the FSA, individuals may generally "earn 10 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities."  *Id.* § 3632(d)(4)(A)(i).  Individuals who present a low or minimum risk of recidivism "shall earn an additional 5 days of time credits for every 30 days" of successful participation in the programs.  *Id.* § 3632(d)(4)(A)(ii).

15. After earning these time credits, BOP applies these credits to the prisoners' sentences to transfer them to prerelease custody or supervised release.  *Id.* § 3632(d)(4)(C).

16. With respect to non-U.S. citizens, under the plain text of the FSA, only noncitizens who are "the subject of a final order of removal under any provision of the immigration laws" are ineligible to have their earned FSA time credits applied.  *See* 18 U.S.C. § 3632(d)(4)(E)(i); *see also* 28 C.F.R. § 523.44(a)(2).

17. On January 30, 2025, however, BOP released a memorandum for all residential reentry managers and regional correctional program administrators titled "Updated Guidance regarding Federal Time Credits to Pre-Release Custody for all Non-U.S. Citizens with an Active Detainer" ("January 30, 2025 Memorandum"). A true and correct copy of this memorandum is attached as **Exhibit A**.

18. The January 30, 2025 Memorandum cancelled all referrals and transfers to Residential Reentry Centers and Home Confinement for BOP prisoners with active immigration *detainers* – not just those subject to a final order of removal.

19. Following the publication of this memorandum, upon information and belief, numerous noncitizens who had already been transferred to prerelease custody and who were subject to a detainer (but not a final order of removal) were re-arrested and re-detained by BOP. In other words, consistent with the January 30, 2025 Memorandum, BOP has demonstrated that it takes the position that those subject to a detainer are not eligible to apply earned FSA time credits to their early transfer to prerelease custody or supervised release.

20. Even if Mr. Bauer could benefit from his FSA credits, pursuant to 8 U.S.C. §1226 (c)(1)(C), an alien who has been convicted of an aggravated felony and who is sentenced to a term of incarceration for at least one year, inclusive of time served or suspended, is subject to "mandatory detention" pending completion of removal proceedings and the execution of any final order of removal.

21. As such, following any federal incarceration, Mr. Bauer would likely be ineligible for release from ICE custody and would remain detained for the duration of the removal proceedings, far past his release from criminal custody. As a result of massive backlogs that have formed in the immigration courts, Mr. Bauer's immigration case is likely to drag on for months. Additionally, recent Executive Orders issued by the Trump Administration have further exacerbated these challenges, increasing the number of deportable aliens held in detention, the number of cases before judges in immigration courts, and pushing the limits of current non-citizen detention capacity such that over-crowding and unsanitary conditions plague ICE detention centers, and ultimately, further delaying adjudication for Mr. Bauer. In fact, it is unlikely that a final decision will be reached in his immigration case within a year of his apprehension. Despite being convicted of a non-violent crime, Mr. Bauer would likely be detained with other deportable aliens with no regard for the nature of the underlying criminal charges which triggered detention, including individuals who are violent offenders or constitute public safety threats.

22. In addition to the above consequences, if his conviction is determined to be an aggravated felony, Mr. Bauer may be ineligible for voluntary departure, a process allowing him to leave the United States without a formal removal order. Without voluntary departure, Mr. Bauer will likely be removed from the United States and subject to a permanent bar from reentering. *See* 8 U.S.C. § 1182(a)(9)(A)(iii).

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

██████████████████████                                                        5/8/25

_____                              _____

Rachel Winkler                                                                Date



**U.S. Department of Justice**
**Federal Bureau of Prisons**

*Reentry Services Division*                                                                 *Washington, D.C. 20534*

January 30, 2025

**MEMORANDUM FOR ALL RESIDENTIAL REENTRY MANAGERS AND REGIONAL CORRECTIONAL PROGRAM ADMINISTRATORS**

**FROM:**         *Bianca Shoulders*
                         **BIANCA SHOULDERS, ADMINISTRATOR**
                         **RESIDENTIAL REENTRY MANAGEMENT BRANCH**
                         **REENTRY SERVICES DIVISION**

**FROM:**         MELISSA HARRIS ARNOLD  Digitally signed by MELISSA HARRIS ARNOLD
                         Date: 2025.01.30 10:43:54 -05'00'
                         **MELISSA ARNOLD, ADMINISTRATOR**
                         **CORRECTIONAL PROGRAMS BRANCH**
                         **CORRECTIONAL PROGRAMS DIVISION**

**SUBJECT:**    **Updated Guidance on Application of Federal Time Credits to Pre Release Custody for all Non-U.S. Citizens with an Active Detainer**

The purpose of this memorandum is to provide updated guidance on the referral and placement of non-U.S. citizens with active detainers in pre-release custody, both Residential Reentry Centers (RRC) and Home Confinement (HC), as referenced in Program Statement 5410.01, First Step Act of 2018 – Time Credits: Procedures for Implementation of 18 U.S.C. § 3632(d)(4).

**Cessation of Referral and Placement of Individuals with Immigration Detainers**
Effective immediately, pending placements in pre-release custody for application of Federal Time Credits (FTC) for all non-U.S. citizens with active detainers will be canceled. Cancelation will occur in all cases where a detainer is lodged and includes cases where a final order of deportation has not been issued. Institutions should immediately halt referral of all such cases.

**Action Required**
- Residential Reentry Managers should cancel all pending FSA placements in the pipeline for non-U.S. citizens where a detainer has been lodged
- Residential Reentry Managers should not process any referrals received that have not yet received a placement date for all non-U.S. citizens where a detainer is lodged
- Institutions should be instructed to cease all FSA/FTC referrals of individuals who are non-U.S. Citizens and have an active detainer, whether or not a final order of removal has been issued
- Institutions should halt all referrals currently routing for non-U.S. citizens with an active detainer

**Removal of Detainer**
If the detaining authority removes a detainer for an individual or rescinds a final order of deportation, Correctional Systems employees will verify, in writing, the reason for the removal (e.g., medical or mental health status, unable to secure travel documents, etc.). This documentation must be included in the referral packet should the institution deem eligibility criteria has been met and an individual becomes eligible for pre-release custody.

**Continuation of First Step Act Implementation**
Individuals meeting the criteria under the FSA in all instances where a detainer is lodged but U.S. citizenship is not a factor may continue to be referred under the FSA and placed in pre-release custody when applicable. Application of FTCs toward early release to supervision for non-U.S. citizens with active detainers will not be affected.

Thank you for your cooperation and continued dedication to supporting the Bureau's mission. Your efforts are critical to ensuring the success of RRC programs during these challenging times.

Should you have any questions, please contact Bianca Shoulders, bshoulders@bop.gov, or Melissa Arnold, m1arnold@bop.gov.

# RACHEL S. WINKLER, ESQ.
602-628-1389 • rhsacks@gmail.com

## EXPERIENCE

**Nixon Peabody,** August 2019 – Current                                                     Washington, D.C.
*Partner*
Member of the Cross-Border Risks team with a focus on immigration benefits and visas, removal and interpol defense, and international criminal investigations. Specializes in complex problems related to protections for vulnerable populations, start-ups, entertainment, influencer, fashion, sports, music, and creative-arts industry clients focused on immigration sponsorship, visa eligibility, and I-9 compliance.

**Frontier Solutions**, February 2017- August 2019                                           Washington, D.C.
*Senior Counsel*
Provide strategic advice and counsel on immigration compliance and visa programs for companies, individuals, and schools, as well as creative solutions to complex immigration law problems, especially related to previous consular denials based upon law enforcement investigations. Support investigations and provide legal advice regarding immigration consequences of domestic and international financial crimes, employment eligibility, visa issues, export violations, and customs matters. Serve as expert witness and consultant on immigration issues arising in litigation and legislative advocacy. Practice includes immigration-related corporate policy formulation; permanent residence and citizenship; visas for executives, entrepreneurs, artists and musicians, managers, scientists, scholars, investigators, professionals, students and visitors; PERM labor certifications; employment-based immigrant visa petitions.

**Department of Homeland Security**, December 2010 – January 2017                            Washington, D.C.
*Immigration Law Analyst, Office of the Citizenship and Immigration Services Ombudsman,* 2014-2017
Advised Ombudsman on immigration policy issues related to military service members and their families as well as protections for immigrant victims of crime, including human trafficking and domestic violence (VAWA, U, and T visa applications and adjustments of status). Assisted with over 500 USCIS-related case problems annually submitted by employers, petitioners, and immigrant applicants on a wide range of complex immigration issues. Coordinated case assistance and resolution for non-USCIS immigration-related matters pending with DHS and federal partners and liaised on interagency policy matters related to protections for immigrant victims. Supported the DHS Blue Campaign and the DHS Council on Combating Violence Against Women as subject matter expert on human trafficking issues and protections for immigrant victims and assisted with program policy development, oversight, interagency liaising, development and evaluation of anti-human trafficking and immigrant victim focused legislation, resource guides and public materials. Conducted regular stakeholder engagements including meetings, teleconferences, webinars, and trainings with non-governmental organizations on issues impacting the delivery of immigration benefits and services. Served as a keynote speaker, panelist, and trainer on multiple occasions during engagements coordinated by federal, state, and local government and non-governmental organizations related to protections for vulnerable immigrant populations.

*Special Advisor to the Acting General Counsel and Senior Counselor to Secretary (detail),* 2012 – 2013
Advised the General Counsel on wide variety of issues including immigration and border security. Drafted, revised, and proofread correspondence, congressional reports, and memorandums to the Secretary. Identified and implemented strategic priorities related to immigration, border security, oversight investigations, national security issues, and legal matters on behalf of the Secretary and the Department. Analyzed legislative proposals, drafted messaging, and proposed initiatives, as well as develop, design and implement actions to further the priorities of the Department. Guided and managed complex and highly sensitive special projects and assignments relating to immigration, border security, privacy, and national security. Liaised on privacy issues, immigration and border security policy issues with the White House.

*Special Assistant (detail), Office of the Citizenship and Immigration Services Ombudsman,* 2011 - 2012
Served as Special Assistant to the Ombudsman, leading communications, public affairs strategist, and web manager, coordinating and organizing press rollouts and stakeholder engagements on immigration issues nationwide and drafting, editing, and managing all public-facing material. Supported the DHS designee to the White House Council on Women and Girls, highlighting efforts of the Department that support women and girls and combat violence against women. Participated in DHS Web Council and contributed to initiative that set standards for department-wide review of website management.

*Policy Analyst, Office of the Citizenship and Immigration Services Ombudsman,* 2010 – 2014
Researched and analyzed immigration policy issues for the purpose of making substantive critiques for published recommendations or informal meetings to facilitate better process for the public and U.S. Citizenship and Immigration Services (USCIS). Drafted contributions related to employment, family, and humanitarian immigration issues for Annual Report submitted to Congress. Coordinated and led national outreach to community based organizations, law firms, and advocacy groups to facilitate discussion for feedback to USCIS, DHS, and the Administration on policy and legal issues. Planned and executed four national annual conferences featuring government and stakeholder panels and keynote speakers including Department, component and White House leadership with over 300 attendees per conference. Developed language access plan to serve immigrant populations in over 10 languages.

**Military Spouse J.D. Network and Foundation,** 2011 – Present
International
*President-Elect, President, Past-President*
Established bar association and affiliated non-profit foundation to represent unique interests of licensed attorneys married U.S. military personnel stationed in the U.S. and abroad. Responsible for national grassroots network of 500+ members and management of volunteer leadership team overseeing communication, organizational strategy, fundraising, policy development, and advocacy program. Successfully implemented membership dues resulting in revenue of $50,000 annually. Secured grants in excess of $25,000 from private endowments. Directed national advocacy efforts for state bar accommodations for military spouse attorneys including supervising 50 state directors, resulting in successful rule change accommodations for military space attorneys in 12 states and one territory. Conducted outreach with members of national and state legal, political, and military communities, and raise visibility of the Network through public engagement including coordinated media targeting. Directed and managed strategy to develop State and Federal legislative allies to advance the interests of the Network.

**EDUCATION**
**University of Arizona James E. Rogers College of Law,** *Juris Doctor*            May 2010
**Arizona State University Barrett Honors College,** *B.S. in Justice Studies.*          May 2007

**PROFESSIONAL LICENSES/CLEARANCES**
Bar Admission: Arizona (November 2010), Washington DC (2020); Top Secret Security Clearance (TS/SCI – June 6, 2013)